UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 12-43166
                                                          (Jointly Administered)
ENERGY CONVERSION DEVICES,
INC., et al.,[1]                                          Chapter 11

              Debtors.                                    Judge Thomas J. Tucker
_____/

**OPINION REGARDING MOTION OF AMERI-SOURCE SPECIALTY PRODUCTS
FOR ALLOWANCE OF ADMINISTRATIVE CLAIM AND TO COMPEL PAYMENT**

**I. Introduction**

The dispute now before the Court requires the Court to decide, among other things, whether an administrative expense request under 11 U.S.C. § 503(b)(9) may ever be disallowed based on 11 U.S.C. § 502(d). The answer is no, for the reasons stated below.

**II. Background and facts**

These two jointly-administered Chapter 11 cases are being administered under a confirmed plan of liquidation.[2] The cases are before the Court on a motion filed by Ameri-Source Specialty Products ("Ameri-Source"), entitled "Motion of Ameri-Source Specialty Products for Allowance of Administrative Claim and to Compel Payment."[3] John Madden, the Liquidation Trustee under the Debtors' confirmed plan (the "Trustee"), filed an objection. The Court held a hearing on December 12, 2012, and took the Motion under advisement.

Before the Debtors filed these bankruptcy cases, Ameri-Source supplied steel to the

---

[1] The Debtors in these jointly administered cases are Energy Conversion Devices, Inc. (Case No. 12-43166) and United Solar Ovonic LLC (Case No. 12-43167).

[2] The Debtors' joint Chapter 11 Plan (Docket # 754) was confirmed on July 30, 2012. (Docket # 1064). The effective date of the confirmed plan was August 28, 2012 (*see* Docket # 1220).

[3] Docket # 1425, the "Motion."

Debtor United Solar Ovonic LLC ("USO"). Ameri-Source timely filed a proof of claim asserting a nonpriority, unsecured claim against USO for $3,167,876.20. The Debtors filed an objection to that claim, and Ameri-Source later amended the claim to an increased amount of $4,031,416.84. The Liquidation Trustee ("Trustee") has succeeded to the Debtors' objection to this claim, and it remains pending, in discovery, under a scheduling order.[4]

In addition to its nonpriority unsecured claim, Ameri-Source timely filed a proof of claim for an administrative expense in the amount of $185,348.95, based on 11 U.S.C. § 503(b)(9).[5] This expense is for the invoiced amount for steel that Ameri-Source delivered to USO on January 31, 2012, fourteen days before USO filed its bankruptcy petition on February 14, 2012.

Roughly four months after filing its administrative expense claim, and two months after Debtors' confirmed plan became effective, Ameri-Source filed its Motion, on October 24, 2012. The Motion seeks an order allowing Ameri-Source's § 503(b)(9) administrative expense and compelling the Trustee to pay it immediately.

## III. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

This proceeding also is "core" because it falls within the definition of a proceeding

---

[4] *See* Docket ## 865, 1158, 1243, 1659, 1712.

[5] Soon after the filing of these bankruptcy cases, on Debtors' motion, the Court entered an order that, among other things, required all parties asserting a § 503(b)(9) administrative expense to file a proof of claim for such expense, by June 21, 2012. (*See* Order, etc., filed February 28, 2012 (Docket # 89) at ¶¶ 3, 5, 10, 12.) Ameri-Source filed such a proof of claim on June 14, 2012. (*See* Docket # 1425 at ¶ 5 and Ex. 4).

2

"arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, including Bankruptcy Code §§ 503(b)(9) and 502(d). And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See Allard v. Coenen*, 419 B.R. at 27.

**IV. Discussion**

   **A. Bankruptcy Code §§ 503(b)(9) and 502(d), and the parties' arguments**

Section § 503(b)(9) provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including —
>
> . . .
>
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

The Trustee disputes Ameri-Source's right to allowance and payment of an administrative expense, on two grounds. Both grounds are premised on the Trustee's allegations that Ameri-Source received payments totaling $84,166.65 from USO during the 90-day period preceding the filing of USO's bankruptcy petition, and that these payments constitute preferential transfers avoidable under 11 U.S.C. § 547.[6] Because of this, the Trustee argues first, Ameri-Source's

---

[6] Ameri-Source does not concede that these payments are avoidable preferences, and the Trustee has not yet filed an adversary proceeding seeking to avoid these transfers.

administrative claim must be disallowed under 11 U.S.C. § 502(d). That section provides:

> Notwithstanding subsections (a) and (b) of this section, **the court shall disallow any claim of any entity** from which property is recoverable under section 542, 543, 550, or 553 of this title or **that is a transferee of a transfer avoidable under section** 522(f), 522(h), 544, 545, **547**, 548, 549, or 724(a) of this title, **unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section** 522(i), 542, 543, **550**, or 553 of this title.

(emphasis added). Ameri-Source does not admit that the pre-petition payments it received from USO are avoidable transfers, but argues that even if they are, § 502(d) does not apply to, and cannot be used to disallow, a § 503(b)(9) administrative expense.

As a second ground of objection, the Trustee argues that even if § 502(d) does not apply to a § 503(b)(9) administrative expense claim, the Court has discretion to delay, and should delay, any requirement to pay Ameri-Source's administrative expense, until after the Trustee's preference claim against Ameri-Source has been adjudicated. According to the Trustee, this would protect the bankruptcy estate against any future failure or inability by Ameri-Source to pay to the estate any judgment it obtained by avoiding preferential transfers.

**B. The Trustee's § 502(d) argument**

The Trustee's § 502(d) argument presents a legal issue on which there is a split of authority, and the United States Court of Appeals for the Sixth Circuit has not ruled on the issue. The Trustee argues that § 502(d) may be used to disallow a § 503(b)(9) administrative expense. This argument is supported by some of the cases, including cases decided both before and after § 503(b)(9) was added to the Bankruptcy Code by the 2005 amendments, commonly known as BAPCPA.[7] Under the reasoning of some of the pre-BAPCPA cases, *all* administrative expense

---

[7] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

requests under § 503(b) are subject to disallowance under § 502(d). *See MicroAge*, *Inc. v. Viewsonic Corp.* (*In re MicroAge, Inc.*), 291 B.R. 503, 508-12 (B.A.P. 9th Cir. 2002); *Tidwell v. Atlanta Gas Light Co.* (*In re Georgia Steel*, *Inc.*), 38 B.R. 829, 839-40 (Bankr. M.D. Ga. 1984). From these cases, it would follow that a § 503(b)(9) administrative expense may be disallowed based on § 502(d), like any other administrative expense.

But other pre-BAPCPA cases rejected this view, holding that § 503(b) administrative expense requests cannot be disallowed based on § 502(d). These cases, which include a decision of the United States Court of Appeals for the Second Circuit, held that § 503(b) administrative expense claims are not subject to the provisions of §§ 501 and 502, which apply to the allowance of claims generally. *See ASM Capital, LP v. Ames Dep't. Stores*, *Inc.* (*In re Ames Dep't. Stores*, *Inc.*), 582 F.3d 422, 427-32 (2d Cir. 2009)("[w]e hold that section 502(d) does not apply to administrative expenses under section 503(b).");[8] *Beasley Forest Products*, *Inc. v. Durango Georgia Paper Co.* (*In re Durango Georgia Paper Co.*), 297 B.R. 326, 328-31 (Bankr. S.D. Ga. 2003).

The pre-BAPCPA cases that apply § 502(d) to administrative expense requests rely heavily on the language in § 502(d) that "the court shall disallow any claim of any entity" that is a transferee of an avoidable transfer. Such cases say that the word "claim" as defined in the Bankruptcy Code[9] is broad enough to include even post-petition administrative expense requests. *See, e.g., MicroAge, Inc.*, 291 B.R. at 508.

---

[8] While the *Ames Dep't. Stores* case was decided in 2009, the relevant events in the case occurred before the 2005 BAPCPA amendments took effect, and the Second Circuit noted that "[n]either party has suggested that section 503(b)(9) has any relevance to this appeal, and we do not specifically address its interaction with section 502(d)." 582 F.3d at 424 n. 2.

[9] *See* 11 U.S.C. § 101(5).

In taking a contrary view of § 502(d), however, the Second Circuit noted in the *Ames Dep't. Stores* case that "other sections of the Bankruptcy Code distinguish between 'claims' and requests for administrative expenses under section 503(b)." *Ames Dep't. Stores*, 582 F.3d at 428 (citations and examples omitted). The Second Circuit explained at length its conclusion that:

> The structure and context of section 502(d) suggests that Congress intended it to differentiate between claims and administrative expenses, and not to apply to the latter. Section 502, in conjunction with section 501, provides a procedure for the allowance of claims that is entirely separate from the procedure for allowance of administrative expenses under section 503.

*Id.* at 429. And the court reasoned that the opening phrase of § 502(d) makes clear that this subsection does not apply to § 503(b) administrative expenses:

> Section 502(d) provides that, "[n]otwithstanding subsections (a) and (b) of this section," the court shall disallow any claim of an entity from whom property is recoverable under certain avoidance provisions of the Bankruptcy Code, unless the entity has returned the recoverable property. The plain language thus introduces section 502(d) as an exception to the automatic allowance of proofs of claims under sections 502(a) and (b), and suggests that the subsection's scope is limited to that process and does not extend to claims allowable under section 503. That suggestion is reinforced by the absence from section 502(d) of any reference to section 503.

*Id.* at 430. The court further reasoned that if § 502(d)'s "mandatory disallowance of claims" language were construed to apply to § 503(b) administrative claims, that would create a conflict with the "mandatory terms in which section 503(b) is drafted, requiring courts to allow requests for administrative expenses." *See id.* at 430-31. For these and other reasons, the Second Circuit held that § 502(d) does not apply to § 503(b) administrative expense requests. *Id.* at 432.

Several more recent cases have discussed § 503(b)(9) specifically, at length, and are not

unanimous. At least one such case, *In re Circuit City Stores, Inc.*, 426 B.R. 560 (Bankr. E.D. Va. 2010), supports the Trustee's argument. That case reasoned that even if other types of § 503(b) administrative expenses are *not* subject to § 502(d), as held by "the majority of courts" including the Second Circuit in the *Ames Dep't. Stores* case, § 503(b)(9) administrative expenses are different, because they are claims that arise pre-petition. As such, the court reasoned, they are subject to the provisions of *both* § 502 and § 503, and therefore are subject to § 502(d). *See* 426 B.R. at 569-71. In a supplemental opinion denying motions for reconsideration, the *Circuit City Stores* court summarized its reasoning this way:

> In its Memorandum Opinion, the Court concluded that a claimant asserting a § 503(b)(9) administrative expense claim must file a proof of claim under § 501 in order to have such claim allowed as an administrative expense under § 503(b)(9). Rules 3002 and 3003 of the Federal Rules of Bankruptcy Procedure require all creditors to file proofs of claim pursuant to § 501(a). By definition, § 503(b)(9) administrative expense claims arise within the 20 days prior to the Petition Date. This means that the holders of § 503(b)(9) administrative expense claims are creditors as defined in § 101(10)(A) of the Bankruptcy Code. As creditors, the holders of § 503(b)(9) administrative expense claims (unlike the majority of entities holding other § 503(b) administrative expense claims that arise postpetition) must file a proof of claim under § 501(a) of the Bankruptcy Code. In accordance with the Fourth Circuit's holding in *Durham [v. SMI Indus. Corp., 882 F.2d 881 (4th Cir. 1989)]* that § 502(d) may be used to bar claims filed under § 501, the Court concluded in its Memorandum Opinion that § 502(d) may be used to temporarily disallow § 503(b)(9) Claims filed under § 501(a) up to the amount of the alleged Preferential Transfers.

426 B.R. at 574.

Several other cases, however, have held that § 502(d) does not apply to § 503(b)(9) administrative expenses. These include a case decided by another bankruptcy judge of this district. *See In re Plastech Engineered Products, Inc.*, 394 B.R. 147, 161-64 (Bankr. E.D. Mich.

7

2008)(Shefferly, J.); *In re Momenta*, *Inc.*, 455 B.R. 353, 361-65 (Bankr. D.N.H. 2011); *Southern Polymer*, *Inc. v. TI Acquisition*, *LLC* (*In re TI Acquisition*, *LLC*), 410 B.R. 742, 748-51 (Bankr. N.D. Ga. 2009). Of these cases, the one case that was decided after the *Circuit City Stores* case, *In re Momenta*, *Inc.*, rejected the *Circuit City Stores* reasoning as follows:

> According to the *Circuit City* case, "if a 'creditor' wishes to be granted an administrative priority under § 503(b)(9), then the creditor must, first, file a proof of claim under § 501, second, have the claim allowed under § 502, and then third, request administrative expense priority under § 503(a)." The *Circuit City* court's framework adds a requirement to allowance of administrative expense claims that is in conflict with the Bankruptcy Code. The *Circuit City* court's holding ignores the distinct processes allowing § 503 administrative expenses and § 501 claims discussed earlier in this opinion. Subsection (a) of § 503 states an entity must "request" an administrative expense claim, not file a proof of claim. Section 503(b) clearly states that an administrative expense requested under one of the nine categories listed in subsection (b) "shall be allowed" and contains no language that makes allowance conditional on filing a proof of claim. Rule 3003(c) is only mandatory if a creditor seeks to have a proof of claim allowed. In fact, the rule very clearly states that the consequences of failing to file a proof of claim results in the entity not being treated as a creditor with respect to such claim for purposes of voting and distribution. Thus, nothing in Rule 3003(c) prevents an entity from "requesting" an administrative expense claim under § 503(a). Consequently, nothing in Rule 3003(c) lends support that a § 503(b)(9) administrative expense claim can be disallowed by § 502(d).

455 B.R. at 364. Similarly, the court in *Plastech Engineered Products* discussed at length whether the pre-petition nature of the § 503(b)(9) administrative expense makes it subject to § 502(d), and concluded that it does not. *Plastech Engineered Products*, 394 B.R. at 160-61, 163.

The Court has carefully reviewed all of the cases cited by the parties. The cases

8

thoroughly discuss the issue, and there is no need to repeat that entire discussion here. The Court is persuaded that the correct reasoning and views are those taken by the Second Circuit in the *Ames Dep't. Stores* case, regarding § 503(b) administrative expenses in general, and by the courts in the *Plasstech Engineered Products* and *Momenta* cases, regarding § 503(b)(9) administrative expenses in particular. The Court holds, therefore, that § 502(d) does not apply to Ameri-Source's § 503(b)(9) administrative expense request.

### C. The Trustee's request to delay payment of Ameri-Source's administrative claim, even though § 502(d) does not apply

The Trustee's second argument is that even if Ameri-Source's § 503(b)(9) administrative claim cannot be disallowed under § 502(d), as the Court has now ruled, the Court still has discretion to, and should, delay compelling the Trustee to pay the claim, until after the Trustee's § 547 preference claim against Ameri-Source is determined. In support of this argument, the Trustee cites the *TI Acquisition* case, cited above. In that case, the Chapter 11 debtor filed an adversary proceeding against a creditor, seeking avoidance and recovery of alleged preferential transfers. *TI Acquisition*, 410 B.R. at 749 n.2. That creditor had filed a claim in the case that included a § 503(b)(9) administrative expense claim. Ruling at a time before any Chapter 11 plan had been confirmed, the bankruptcy court held that § 502(d) does not apply to a § 503(b)(9) administrative expense request. But the court ruled that it would defer requiring payment of the creditor's administrative expense claim, until the pending adversary proceeding against that creditor was determined. *Id.* at 751. The court reasoned as follows:

> The Court must now consider the timing of the payment of the allowed administrative expense of SPI. Two factors support the Court's determination that payment should await a determination of SPI's liability in the adversary proceeding. First, the timing of

9

> the payment of administrative claims is within the discretion of the
> Court.  In this case, BOA has consented to the payment of all
> allowed administrative claims from its collateral, so there is no
> prejudice of a delay to SPI..  Moreover, if the Court were to order
> immediate payment and the Debtor later obtained a judgment
> against SPI in its avoidance action and SPI was unable to pay,
> other creditors would be prejudiced.  Second, the avoidance action
> filed by Debtor is in its early stages but the allegations made in the
> Complaint set forth a *prima facie* case for avoidance of payments
> which are in excess of the allowed administrative claim of SPI.
> Thus, it is sound policy to defer requiring payment until the
> outcome of the pending adversary proceeding is determined.

*Id.* (citations and footnote omitted).

The Trustee's reliance on the *TI Acquisition* case is misplaced.  In the *TI Acquisition* case, unlike this case, the court made its ruling before any plan was confirmed.  This is a crucial distinction, as the *TI Acquisition* court itself recognized.  Immediately after the ruling quoted above, the court stated the following, in a footnote:

> Of course, in order to confirm a Plan of Reorganization, the
> administrative expense of SPI would have to be paid in full on
> confirmation. 11 U.S.C. § 1129(a)(9)(A). This would be true
> regardless of whether the adversary proceeding has been finally
> resolved.

*Id.* at 751 n.5.

Whatever discretion the Court may have to allow a Chapter 11 debtor to defer paying allowed administrative expenses before a plan is confirmed, such discretion no longer exists once a plan has been confirmed.  At that point, the confirmed plan controls when allowed administrative expenses must be paid.

In pertinent part, the confirmed plan in this case says the following about the treatment of administrative claims, in Article II, § B.3.a.:

10

> Each holder of an Allowed Administrative Expense Claim other than Professional Fees and United States Trustee Fees will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash: (i) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as practicable thereafter); (ii) **if such Claim is Allowed after the Effective Date, on the date such Claim or any portion of such Claim is Allowed or as soon as practicable thereafter** (or, if not then due, when such Allowed Administrative Expense Claim is due); (iii) at such time and upon such terms as may be agreed upon by such holder and the Debtors; or (iv) at such time and upon such terms as set forth in an order of the Bankruptcy Court.[10]

As noted in Part II of this opinion, the effective date of the confirmed plan was August 28, 2012. Under the Plan's definitions, Ameri-Source's § 503(b)(9) administrative expense claim will become an "Allowed Administrative Expense Claim," no later than the date on which the Court enters its order flowing from this opinion.[11] Under the language of the confirmed plan, quoted in bold above, the administrative expense claim must be paid, therefore, no later than that date, "or as soon as practicable thereafter." That means promptly after the Court enters its order today.

It might be possible to argue that clause (iv) of Article II, § B.3.a. of the confirmed plan, quoted above, gives the Court broad discretion even after confirmation to order a delay in the payment of an Allowed Administrative Expense Claim. This clause appears to allow for payment "at such time and upon such terms as set forth in an order of the Bankruptcy Court." But the Trustee has not made an argument for delay in payment based on clause (iv). And the

---

[10] Second Amended Joint Plan of Liquidation . . ., etc. (Docket # 754) at 10, Article II, § B.3.a (emphasis added).

[11] *See id.* at 2-3, Article I, §§ D.3, D.4 (definitions of "Allowed" and "Administrative Expense Claim").

Court does not interpret this clause so broadly as to give the Court discretion now to delay payment of Ameri-Source's allowed § 503(b)(9) claim. Such an interpretation would render illusory the requirements of clauses (i), (ii), and (iii) of this section of the plan, quoted above. And it would utterly defeat the reasonable expectations of all the administrative expense claimants in this case, who relied on clauses (i) through (iii) in deciding not to object to confirmation of the Debtors' plan. One of the requirements the Debtors had to meet in order to confirm their plan was that all administrative expense claims had to be paid in full in cash on the effective date of the plan, except to the extent particular holders of such claims agreed otherwise. *See* 11 U.S.C. § 1129(a)(9)(A).

Even if the Court did have discretion to delay payment to Ameri-Source, based on clause (iv) or otherwise, the Court would not delay the payment, for the following reasons. First, to delay payment of Ameri-Source's allowed § 503(b)(9) claim until determining the merits of the Trustee's preference claim would, as a practical matter, accomplish for the Trustee the very thing that § 502(d) would accomplish, *if* § 502(d) applied. But the Court has ruled that § 502(d) does not apply. So delaying payment in this way would be an improper evasion of Congressional intent that § 502(d) *not* be a basis to delay payment of § 503(b) administrative expenses.

Second, the Trustee has not yet even filed an adversary proceeding against Ameri-Source to avoid the alleged preferences.

Third, the Trustee has not demonstrated that he is likely to succeed in such an adversary proceeding, if he ever files it. Even if the Trustee could meet his burden of proving all the necessary avoidance elements under 11 U.S.C. § 547(b), his preference claims still would be subject to numerous possible defenses under 11 U.S.C. § 547(c). At this point, the Trustee seeks

12

a delay in payment to Ameri-Source without having yet shown that any pre-petition transfers to Ameri-Source are actually avoidable as preferences, or even that the Trustee is likely to succeed in avoiding such transfers.

Fourth, even if the Trustee had shown that he is likely someday to avoid the $84,166.65 in alleged preferential transfers that Ameri-Source received from USO, the Trustee has not demonstrated that delaying payment of Ameri-Source's allowed § 503(b)(9) claim is necessary to protect the bankruptcy estate. The Trustee has not alleged any reason or facts that suggest that Ameri-Source will not be fully collectible, if and when the Trustee obtains a judgment against Ameri-Source for recovery of the alleged preferences.

Fifth, the Trustee has not demonstrated why the estate is not fully protected by virtue of the Trustee's ability to use § 502(d) as a defense against paying anything on Ameri-Source's nonpriority, unsecured claim, to the extent that claim is allowed. The amount of that claim is $4,031,416.84. As noted in Part II of this opinion, the Trustee has objected to that claim, and it remains to be seen what the allowed amount of that claim will be. But the *allowed* amount of Ameri-Source's general unsecured claim is likely to yield a dividend to Ameri-Source of approximately 50%, according to a recent projection by the Trustee.[12] So, for example, if Ameri-Source's general unsecured claim is ultimately allowed in the reduced amount of $2 million, the dividend from the estate will equal roughly $1 million. And the Trustee *will* have the ability to invoke 11 U.S.C. § 502(d) to delay paying any of the roughly 50% dividend on Ameri-Source's allowed general unsecured claim, unless and until Ameri-Source repays the estate in full for any avoidable transfers it received. The Trustee has not demonstrated why this tool will not provide

---

[12] *See* "Liquidation Trustee's Objection to Application of Foley & Lardner LLP for Final Allowance of Compensation" (Docket # 1455) at 1 ¶ 1.

the estate with ample protection against the possibility that a future preference judgment against Ameri-Source might otherwise be uncollectible.

For these reasons, the Court concludes that it does not have discretion to delay the payment of Ameri-Source's § 503(b)(9) claim, and that even if the Court did have such discretion, the Court still would not delay the payment. Rather, such administrative expense must be paid in full immediately.

## IV. Conclusion

For the reasons stated in this opinion, the Court will enter an order granting Ameri-Source's motion, allowing Ameri-Source's § 503(b)(9) administrative expense in full, in the amount of $185,348.95, and requiring the Liquidation Trustee to pay that amount to Ameri-Source within seven days.

**Signed on February 11, 2013**                    /s/ Thomas J. Tucker
                                                    **Thomas J. Tucker**
                                                    **United States Bankruptcy Judge**