# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                                    Chapter 11

ENERGY CONVERSION DEVICES, INC.,
et al.,[1]                                                Case No. 12-43166
                                                          (Jointly Administered)

          Debtors.                                        Judge Thomas J. Tucker
_____/

## OPINION REGARDING THE DUFF & PHELPS SECURITIES, LLC ADMINISTRATIVE EXPENSE CLAIM AND REQUEST FOR PAYMENT

These jointly administered cases are before the Court on an administrative expense claim filed by Duff & Phelps Securities, LLC ("Duff & Phelps"), entitled "Amended Notice of Administrative Expense Claim and Request for Payment," (Docket # 1320, the "Request"). The Official Committee of Unsecured Creditors (the "Committee") and the United States Trustee filed objections to the Request, and Duff & Phelps filed a written response to the objections.[2]

The Court held a hearing on the Request, and after the hearing the Court entered an Order approving the Request in part, and allowing Duff & Phelps an administrative claim in the amount of $255,855.66.[3] This amount reflects the part of the Request that no one objected to. The Court reserved for decision the remainder of the Request, which seeks a "Restructuring Fee" in the amount of $550,000.00 as an allowed administrative expense, and payment of that amount. For the reasons stated in this opinion, the Court will deny that portion of the Request.

---

[1] The Debtors in these jointly administered cases are Energy Conversion Devices, Inc. (Case No. 12-43166) and United Solar Ovonic LLC (Case No. 12-43167).

[2] Docket ## 1403, 1529, 1335, 1532.

[3] Docket # 1550.

## I. Background

The Request for the $550,000.00 Restructuring Fee is based, at least initially, on ¶ 3(b) and related provisions of a retention agreement dated December 1, 2011, (the "Retention Agreement"), which was signed by Duff & Phelps, the Debtor Energy Conversion Devices, Inc. ("ECD"), and a group of note holders referred to in the Retention Agreement as the "Convertible Noteholders," (sometimes referred to in this opinion as the "Ad Hoc Consortium of Noteholders," or the "Ad Hoc Consortium," or the "AHCN"). The Retention Agreement was made slightly more than two months before these Chapter 11 bankruptcy cases were filed on February 14, 2012. The parties agreed that Duff & Phelps was being retained by the AHCN, for the purpose of providing financial advisory services to the AHCN, only, but would be paid by the Debtor ECD.[4] In addition to a monthly fee of $100,000.00 per month, the Debtor was to pay Duff & Phelps a "Restructuring Fee" on the effective date of a "Restructuring Transaction (as defined herein)."[5]

The Retention Agreement describes how the amount of the Restructuring Fee was to be calculated. But it is clear that the $550,000.00 now requested by Duff & Phelps is the minimum Restructuring Fee that would be due under the terms of the Retention Agreement, if a "Restructuring Transaction" occurred.

The Retention Agreement provided that if ECD became "a debtor under Chapter 11 of the Bankruptcy Code," ECD would "use its best efforts to (i) assume its obligation(s) hereunder under Bankruptcy Code section 365, [and] (ii) file motions to such effect within the first thirty

---

[4] Retention Agreement (copy attached to Docket # 1403) at 1 (opening paragraph), ¶¶ 1, 7.

[5] *Id.* at ¶¶ 3(a), 3(b).

2

(30) days of any such bankruptcy case." The Retention Agreement further stated that "[f]or the avoidance of doubt, such motions and accompanying orders shall provide that the amounts payable hereunder shall be payable as an administrative expense of [ECD's] bankruptcy estate and shall be payable even if such case is converted to a case under chapter 7 of the Bankruptcy Code."[6]

Just before they filed these Chapter 11 bankruptcy cases, ECD and its subsidiary, United Solar Ovonic LLC ("USO"), entered into an agreement with the AHCN entitled "Plan Support Agreement." That agreement was dated as of February 13, 2012, the day before the Chapter 11 cases were filed.[7] Duff & Phelps was not a named party to the Plan Support Agreement, nor did it sign the agreement. Section 4(f) of the Plan Support Agreement, captioned "Retainers," provided the following regarding the payment of Duff & Phelps's fees after the filing of the bankruptcy cases:

> [T]he Company shall provide by wire transfer the following retainers . . . (B) to Duff & Phelps Securities LLC the sum of $400,000 as a retainer for approved fees and expenses incurred after the Petition Date on behalf of the Ad Hoc Consortium, with any such amounts in excess of the approved fees and expenses being returned to the Company upon the earlier to occur of the Termination Date . . . **Duff & Phelps Securities LLC will charge a monthly rate of $100,000 per month.** In the event . . . Duff & Phelps Securities LLC continue[s] to represent the Ad Hoc Consortium during the Chapter 11 Cases and the foregoing retainer amounts are not sufficient to cover all of their approved fees and expenses incurred during the Chapter 11 Cases, **the Plan shall provide that the approved fees and expenses of . . . Duff and Phelps Securities, LLC in excess of said retainer amounts shall**

---

[6] *Id.* at ¶ 3(f).

[7] A copy of the Plan Support Agreement was filed on March 15, 2012, at Docket # 167 (the "Plan Support Agreement").

**be Administrative Expense Claims allowed against the
Debtors' estates and payable on the effective date of the Plan.**

. . . Duff & Phelps Securities LLC will provide to the Company,
the Creditors Committee and the United States Trustee, and any
additional party as the Bankruptcy Court may order, a monthly
statement of incurred fees, costs and expenses, together with
reasonable supporting detail. The Company, the Creditors
Committee and the United States Trustee, and any additional party
as the Bankruptcy Court may order, shall have 10 business days
after receipt of the monthly invoice to object in writing to the
reasonableness of the fees, costs and expenses. lf no objection is
received upon expiration of that 10 business day period, the fees,
costs, and expenses incurred as set forth in that duly submitted
monthly statement shall be deemed approved. All disputes relating
to such fees, costs and expenses will be resolved by the Bankruptcy
Court. **This Section 4(f) supersedes any prior agreement by the
Company to pay fees and expenses incurred by . . . Duff &
Phelps Securities LLC.**[8]

Contrary to ¶ 3(f) of the Retention Agreement, quoted above, after filing its Chapter 11

bankruptcy case, the Debtor ECD did not file a motion to assume its obligations under the

Retention Agreement, either within the first thirty days of the bankruptcy case or thereafter. Also

contrary to ¶ 3(f) of the Retention Agreement, ECD never moved for or obtained an order

providing that the amounts payable under the Retention Agreement shall be payable as an

administrative expense in the bankruptcy case.

The Retention Agreement was an executory contract of the Debtor ECD as of the

bankruptcy petition date, and also as of the date of entry of the Order Confirming Plan on July

30, 2012. Not only did ECD not assume the Retention Agreement; but also ECD rejected that

contract in the Debtors' confirmed plan. By contrast, the Debtors did assume the Plan Support

Agreement in their confirmed plan. Article VII.A of the Debtors' joint plan provides that

---

[8] Plan Support Agreement at 5-6, ¶ 4(f)(emphasis added).

4

"[s]ubject to the occurrence of the Effective Date, the entry of the Confirmation Order shall serve as an order assuming the Plan Support Agreement unless the Plan Support Agreement has been expressly terminated prior thereto. . . . [U]nless already assumed or rejected by final order of the Bankruptcy Court, all other executory contracts and unexpired leases of the Debtors which are not the subject of a pending application to assume as the Effective Date, shall be deemed rejected."[9]  The order confirming this plan was entered on July 30, 2012.[10]  The Effective Date of the confirmed plan was August 28, 2012.[11]  As a result, the Plan Support Agreement was assumed by the Debtors under the confirmed plan, but the pre-petition executory contract with Duff & Phelps (the Retention Agreement) was rejected.[12]

## II. Jurisdiction

This Court has subject matter jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.).  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), and 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b).  Matters falling

---

[9]  Second Amended Joint Plan of Liquidation (Docket # 754) at 24-25.

[10]  Docket # 1064, the "Order Confirming Plan."

[11]  *See* Notice of Effective Date, etc. (Docket # 1220).

[12]  There is at least a colorable argument, suggested by Duff & Phelps at the hearing, that the Court should view the Retention Agreement as no longer being executory as of the time the Order Confirming Plan was entered, and therefore not subject to rejection at that time under 11 U.S.C. § 365 as an executory contract.  Even if this is a correct view, the key point here is that unlike the Plan Support Agreement, the Retention Agreement was not assumed or incorporated into the Debtors' confirmed plan. And as discussed below, the terms of the assumed Plan Support Agreement are inconsistent with, and supersede, any obligation the Debtor would have to pay any Restructuring Fee to Duff & Phelps under the Retention Agreement.

within this category in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## III. Discussion

Duff & Phelps relies upon the terms of the confirmed plan and ¶ 4(f) of the Plan Support Agreement, quoted above, as support for its request for the $550,000.00 Restructuring Fee as an allowed administrative expense. In addition to assuming the Plan Support Agreement, the confirmed plan defined "Administrative Expense Claims," which were to be paid in full when allowed,[13] to include the following:

> "Administrative Expense Claims" means: . . (b) all fees of the professionals employed by the Ad Hoc Consortium required to be paid as Administrative Expense Claims on the Effective Date pursuant to the terms of the Plan Support Agreement (subject to any objection rights whether arising under the Plan Support Agreement or otherwise).[14]

Citing this language in the confirmed plan, Duff & Phelps argues that under ¶ 4(f) of the assumed Plan Support Agreement, it is entitled to allowance of its Restructuring Fee as an administrative expense.

The Court disagrees, and finds that these provisions do not support allowance of any administrative expense claim for Duff & Phelps for the Restructuring Fee at issue.

---

[13] Second Amended Joint Plan at 10, Article II.B.3(a).

[14] *Id.* at 2-3, Article I.D.3.

6

First, under the definition in the confirmed plan of "Administrative Expense Claims," quoted above, the Restructuring Fee sought by Duff & Phelps cannot be deemed to be "required to be paid as Administrative Expense Claims" unless "the terms of the Plan Support Agreement" say so.  Second, the terms of the Plan Support Agreement do not say so, but rather, say the opposite.  Paragraph 4(f) of the Plan Support Agreement requires that to the extent the Duff & Phelps fees exceed the $400,000.00 retainer paid to Duff & Phelps, "the Plan shall provide that the approved fees and expenses of . . . Duff & Phelps Securities, LLC in excess of said retainer amounts shall be Administrative Expense Claims allowed against the Debtors' estate and payable on the Effective Date of the Plan."  This language applies only to "the approved fees and expenses of" Duff & Phelps.  In the sentence immediately before the one just quoted, ¶ 4(f) says that "Duff & Phelps Securities, LLC will charge a monthly rate of $100,000.00 per month."  Nowhere does ¶ 4(f), or any other language in the Plan Support Agreement, provide that Duff & Phelps will charge or will be entitled to any Restructuring Fee, or any fee other than the $100,000.00 per month fee.  The reference in ¶ 4(f), therefore, to "the approved fees and expenses of Duff & Phelps Securities, LLC" is limited to the $100,000.00 monthly fee, and this phrase does not include the $550,000.00 Restructuring Fee requested.  And later in ¶ 4(f) of the Plan Support Agreement, the agreement makes clear that any prior agreement by the Company to pay fees and expenses of Duff & Phelps is superseded, and is not incorporated into the Plan Support Agreement.  This language therefore, unambiguously excludes any fees based upon the December 1, 2011 Retention Agreement:

7

> This Section 4(f) supercedes any prior agreements by the Company
> to pay fees and expenses incurred by . . . Duff & Phelps Securities,
> LLC.[15]

For these reasons, Duff & Phelps cannot be allowed an administrative expense claim, under the confirmed plan or the assumed Plan Support Agreement, for the Restructuring Fee. Rather, its allowed administrative expense is limited to the monthly fee, which the Court has already allowed by prior order.

Duff & Phelps argues that the Committee and the United States Trustee are barred from objecting to the allowance and payment of the Restructuring Fee as an administrative expense, by paragraph 18 of the Order Confirming Plan. That paragraph states:

> All parties of interest are authorized to object to the amount and
> reasonableness of the professional fees of the Ad Hoc Consortium
> and claimed as an Administrative Expense Claim. Any such
> objection must be lodged in accordance with the timing provided
> under the Federal Rules of Bankruptcy Procedure and the Plan
> deadline. In no event may any party object to the character of any
> fees and expenses of the Ad Hoc Consortium as an Administrative
> Expense Claim under the Plan.[16]

According to Duff & Phelps, this language in the Order Confirming Plan means that no one can object to the Restructuring Fee's character as an administrative expense, or in the words of ¶ 18, to its "character . . . as an Administrative Expense Claim under the Plan." Rather, Duff & Phelps says, parties can object to this fee only as to its "amount" or its "reasonableness."

The Court concludes that ¶ 18 does not favor the Duff & Phelps position. First, the Court has authority, independent of any limits in the Order Confirming Plan on a party's right to object

---

[15] Plan Support Agreement ¶ 4(f).

[16] Order Confirming Plan at 20 ¶ 18.

8

to the Restructuring Fee, to determine whether that fee should be allowed as an administrative expense in this case. Second, the objections of the Committee and the United States Trustee are permitted by ¶ 18, as objections to the "amount" and "reasonableness" of the Duff & Phelps fees. This is so because these objecting parties argue that part of the Duff & Phelps fees — the $550,000.00 Restructuring Fee, as opposed to the $255,855.66 in monthly fees and expenses claimed — is a fee that neither the Debtor ECD nor the Liquidating Trust on behalf of the bankruptcy estate is obligated to pay, by the confirmed plan or otherwise.

Third, the fees about which ¶ 18 says no party may object to their "character . . ." are only "the professional fees of the Ad Hoc Consortium and claimed as an Administrative Expense Claim." The Restructuring Fee at issue is clearly not a "professional fee of the Ad Hoc Consortium" within the meaning of ¶ 18, because it is a fee that would be due only under the Retention Agreement, and not under the Plan Support Agreement. Under the Retention Agreement, only the Debtor ECD was obligated to pay the fees of Duff & Phelps for its work for the Ad Hoc Consortium, including any Restructuring Fee. The Ad Hoc Consortium was not obligated to pay fees to Duff & Phelps under the Retention Agreement, so those fees cannot be viewed as "professional fees of the Ad Hoc Consortium" within the meaning of ¶ 18 of the Order Confirming Plan. Rather, the only fees claimed by Duff & Phelps that can be viewed as "professional fees of the Ad Hoc Consortium" within the meaning of ¶ 18 are the fees due under the Plan Support Agreement, which the confirmed plan assumed. While those fees are to be paid by the bankruptcy estate, rather than by the Ad Hoc Consortium, they can at least arguably be viewed as "professional fees of the Ad Hoc Consortium," because of the plan's definition of and language about "Administrative Expense Claims," quoted above. The plan defines

"Administrative Expense Claims" to include "all fees of the professionals employed by the Ad Hoc Consortium required to be paid as Administrative Expense Claims on the Effective Date pursuant to the terms of the Plan Support Agreement."  Duff & Phelps was "employed by" the Ad Hoc Consortium, even though the Ad Hoc Consortium was not to pay the Duff & Phelps fees, and the Plan Support Agreement requires that the Duff & Phelps $100,000 monthly fees be paid as an Administrative Expense Claim.  That is sufficient, arguably at least, to give the Duff & Phelps *monthly fees* the limited-objection protections of ¶ 18 of the Order Confirming Plan.  But the same thing cannot be said about the Restructuring Fee at issue.  It is not protected in any way from objection by ¶ 18.

## IV.  Conclusion

For these reasons, the Court will enter a separate order denying Duff & Phelps's Request, to the extent it seeks allowance of an administrative expense for the $550,000.00 Restructuring Fee.  That order will state that it is without prejudice to the right of Duff & Phelps to pursue a non-priority, unsecured claim based on the confirmed plan's rejection of the Retention Agreement.  The order will set a deadline of November 14, 2014 for Duff & Phelps to file such a rejection claim.[17]

---

[17]  To date, Duff & Phelps has not filed such a rejection claim.  The confirmed plan requires that rejection claims be filed within 30 days after the Effective Date, which means no later than September 27, 2012.  (August 28, 2012 Effective Date plus 30 days = September 27, 2012.).  The plan states:

> Any creditor who has a Claim as a result of a rejection of an executory
> contract or unexpired lease shall file a proof of claim for rejection
> damages within thirty days after the Effective Date, failing which such
> Claim shall be disallowed in its entirety.

Second Amended Joint Plan at 25, Article VII.C.  However, the Court will deem a rejection claim by Duff & Phelps to be timely if it is filed by the November 14, 2014 deadline the Court will set in its order to be filed with this opinion.  Duff & Phelps did not know that it would have only a possible rejection

The Court declines to rule on the other arguments made by the Committee and the United States Trustee in objecting to the Duff & Phelps Request, because it is not necessary to do so in light of the Court's ruling above. Nor does the Court express any view on the argument by the United States Trustee that counsel who represented Duff & Phelps in connection with the Request could not properly do so because of a conflict of interest. That issue is now moot, although it is possible that it may recur. If it does recur, the Court will deal with the issue at that time, as needed.

**Signed on October 17, 2014**                                   **/s/ Thomas J. Tucker**
                                                                 **Thomas J. Tucker**
                                                                 **United States Bankruptcy Judge**

---

claim relating to the Restructuring Fee, until the Court issued this opinion and the accompanying order. And Duff & Phelps had a right to pursue its claim for the Restructuring Fee as an administrative expense, and if it had prevailed on that matter, it could not have also filed a rejection claim.