UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                  Chapter 11

ENERGY CONVERSION DEVICES,                              Case No. 12-43166
INC., et al.,[1]                                        (Jointly Administered)

           Debtors.                              Judge Thomas J. Tucker
_____/

**OPINION REGARDING CREDITOR COMMITTEE'S OBJECTION TO CLAIM NUMBER 653 OF DUFF & PHELPS SECURITIES, LLC**

These jointly-administered cases are before the Court on the objection (Docket # 2411, the "Claim Objection") by the Official Committee of Unsecured Creditors (the "Committee") to Claim Number 653 filed on October 31, 2014 by Duff & Phelps Securities, LLC ("Duff & Phelps"), which is a non-priority, unsecured claim in the amount of $550,000.00. Duff & Phelps timely filed a response to the Claim Objection, and the Court held a hearing on January 7, 2015.

For the reasons stated in this opinion, the Court will enter an order overruling the Claim Objection.

**I. Background and jurisdiction**

In an Order filed on October 17, 2014, the Court denied a request by Duff & Phelps for allowance of an administrative expense for a $550,000.00 "Restructuring Fee." This was done for the reasons explained in the Court's written opinion filed the same day. (Docket ## 2387 (the "October 17 Opinion"); 2388 (the "October 17 Order"). The Court incorporates by reference into this opinion the "Background" and "Jurisdiction" sections (pp. 2-6) of the October 17 Opinion. And capitalized terms in this opinion have the same meaning as used and defined in the October

---

[1] The Debtors in these jointly administered cases are Energy Conversion Devices, Inc. (Case No. 12-43166) and United Solar Ovonic LLC (Case No. 12-43167).

17 Opinion.

After the Court denied the Duff & Phelps request that its claimed $550,000.00 Restructuring Fee be allowed as an administrative expense, and as permitted by the October 17 Order, Duff & Phelps filed a proof of claim seeking, in effect, allowance of that same Restructuring Fee as a non-priority, unsecured claim. That claim is based on the fact that the confirmed Chapter 11 Plan in these cases rejected the December 1, 2011 Retention Agreement, which was a pre-petition agreement between Duff & Phelps and the Debtor ECD.

The Committee objects to the claim, arguing that Duff & Phelps never earned a Restructuring Fee under the terms of the Retention Agreement. Duff & Phelps disagrees.

## II. Discussion

The sole disputed issue in the present Claim Objection is whether a "Restructuring Transaction" occurred, within the meaning of ¶ 3(d) on page 3 of the Retention Agreement.[2] That paragraph states, in its entirety:

> (d) <u>Definition of a Restructuring Transaction</u>: "Restructuring Transaction" means any recapitalization, refinancing or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement and/or a material modification or amendment to the terms, conditions or covenants thereof) of the majority in principal amount of the Notes currently outstanding, that is achieved, including without limitation, through a chapter 11 plan of reorganization, exchange offer, tender, waiver, amendment, consent solicitation, rescheduling of debt maturities, changes in interest rates, settlement or forgiveness of debt, conversion of debt and/or other liabilities into equity, issuance of new securities, raising of new debt or equity capital (including amounts raised from the current debt holders and/or equity holders and including where raised

---

[2] A copy of the Retention Agreement appears in the record as at Docket # 2411 (part of Ex. 6) and at Docket # 1403 (Ex. 1).

> solely for the purpose of avoiding default under existing credit agreements), or sale or other transfer, directly or indirectly of equity, control, assets or other interests of the Company whatsoever, whether in one or a series of transactions, acquisition, mergers or other business combinations or other similar transaction or series of transactions. A Restructuring Transaction shall not include a forced liquidation of the majority of the assets of the Company whether in a chapter 11 or chapter 7 bankruptcy filing. For the avoidance of doubt, an orderly sale of the Company's assets in chapter 11 or chapter 7 shall not be considered a forced liquidation.

As used in this paragraph, the word "Company" is defined, in the opening paragraph on page 1 of the Retention Agreement, to mean ECD. It therefore does not include the Debtor USO.

The facts which are established by the record, and which the Committee does not dispute,[3] include those stated in the following paragraphs of the response filed by Duff & Phelps on December 31, 2014 (Docket # 2428):

- 17 (first sentence);

- 18 (not including footnote, and except for characterization of the sale of inventory and collection of receivables as being "ordinary course");

- 19 (the text beginning on the second line of page 8 with the words "the Debtors, . . .");

- 20 (the text beginning on the second line of with the words "ECD completed the sale . . .");

- 21 through 24; and

- 27 (subparts a, b, and c only).

Based on the undisputed facts, the Court finds and concludes as follows:

1. A "Restructuring Transaction," within the unambiguous meaning of ¶ 3(d) of the

---

[3] This was confirmed by counsel for the Committee, in response to questions from the Court, during the January 7, 2015 hearing.

Retention Agreement ("¶ 3(d)"), did occur, for the reasons stated in paragraphs 2-7 below.

2. Through the confirmed Chapter 11 plan in these jointly-administered cases, there was, within the meaning of ¶ 3(d), "a restructuring (including, without limitation, through any exchange, . . . cancellation, . . . retirement . . .) of the majority in principal amount of the Notes currently outstanding, that is achieved, including without limitation, through a chapter 11 plan of reorganization" and/or through the "sale or other transfer, directly or indirectly of . . . assets . . . of the Company whatsoever, whether in one or a series of transactions . . .."

3. There was all of the following: an "exchange;" a "cancellation;" and a "retirement" — all three things — of the "majority in principal amount of the Notes," within the meaning of ¶ 3(d).

4. Such exchange, cancellation, and retirement was achieved through the confirmed Chapter 11 Plan, which was "a chapter 11 plan of reorganization," and through the "sale or other transfer, directly or indirectly of . . . assets . . . of the Company whatsoever, whether in one or a series of transactions . . .," within the meaning of ¶ 3(d).

5. The "forced liquidation" clause in the penultimate sentence of ¶ 3(d) does not apply, because there was no "forced liquidation of the majority of the assets of the Company." The word "Company" here means, unambiguously, ECD only. And the substantive consolidation provisions of the confirmed Chapter 11 Plan do not change that conclusion. The "assets" of ECD include its cash. And neither that cash nor any other asset of ECD was the subject of a "forced liquidation." Rather, all the assets of ECD that were liquidated after ECD entered into the Retention Agreement with Duff & Phelps were sold through "an orderly sale," within the meaning of the last sentence of ¶ 3(d), and an "orderly sale" is not a "forced liquidation" within

4

the meaning of ¶ 3(d).[4]

6. Even if one includes the assets of the Debtor USO with the assets of ECD, as part of the "assets of the Company" within the meaning of ¶ 3(d), there still was no "forced liquidation" of "the majority of the assets" of the two Debtor companies combined.

7. The only assets of USO that even arguably were the subject of a "forced liquidation" within the meaning of ¶ 3(d) were USO's inventory, machinery and equipment that were sold through the public auction sales that concluded in July 2012, and which resulted in total proceeds of approximately $12.7 million, as described in ¶ 19 of Duff & Phelps's response to the Claim Objection (Docket # 2428). All other assets of USO that were liquidated were sold through an "orderly sale" within the meaning of ¶ 3(d).

8. Because a "Restructuring Transaction" occurred, within the meaning of ¶ 3(d) of the Retention Agreement, Duff & Phelps earned a $550,000.00 Restructuring Fee, none of which has been paid. As a result, Duff & Phelps must be deemed to have an allowed, non-priority, unsecured claim of $550,000.00, and the Committee's Claim Objection must be overruled.

### III. Conclusion

For the reasons stated in this opinion, the Court will enter a separate order, overruling the Committee's Claim Objection.

**Signed on January 8, 2015**　　　　　　　　**/s/ Thomas J. Tucker**
　　　　　　　　　　　　　　　　　　　　　　**Thomas J. Tucker**
　　　　　　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**

---

[4] The stock of USO was owned by ECD, but this "asset" of ECD was not "liquidated" or sold, and therefore has not been the subject of a "forced liquidation" within the meaning of ¶ 3(d).